Next case is Jallad v. Madera and Progressive. Mr. Rosen. Good morning. May it please the court, my name is Howard Rosen. I am the attorney for the plaintiff and appellant Sahad Jallad. I'd like to reserve three minutes for rebuttal. Granted. Thank you. Your Honor, multiple issues have been raised in this appeal, but the primary issue that I wish to discuss is an error of law, and that was the dismissal at the pleading stage of the defendant, Felix Madera. Mr. Madera was dismissed on fraudulent groin, excuse me, fraudulent joinder grounds, which means that there was no real claim against him and he was only joined for jurisdiction purposes. But this could not be further from the actual facts and the truth. Is that really what the district court did here, applied a principle of fraudulent joinder, or did it apply fraudulent misjoinder? The court only used the terms fraudulent joinder, and I do know there was an unpublished decision from this court from 2015 that says that the doctrine of fraudulent misjoinder was not officially adopted here. Repeat my question. He said fraudulent joinder, but in his reasoning, did he not apply fraudulent misjoinder? Even if the judge, the charges did apply fraudulent misjoinder, I don't think the analysis changes. And the analysis is that defendant Felix Madera was sued because he caused a motor vehicle accident that resulted in Ms. July's injuries. Those injuries are the only damages for which she seeks recovery. You could have had a trial against Madera, right? But you chose strategically to link progressive with Madera, right? Well, we could have done it twice, yes. I mean, they're totally different claims. One is, were you negligent in causing this accident? And the other one is, do I have a contractual right to insurance coverage? Different witnesses, different cause of action. They have a whole law school class on torts, a whole law school class on contracts. But all the damages would be the same. The resulting liability and what could be assessed against both would be the same facts that were proven as against both, would they not? That's correct, Your Honor. And that is the reason why we opted not to do two separate lawsuits, because in order to recover damages either against Madera or against progressive, the plaintiff had to prove the same elements, that she was seriously injured in a motor vehicle incident. Yes, we would not have to prove negligence against Mr. Madera, against progressive, but that wasn't truly an issue anyway. I mean, Mr. Madera broadsided. But hasn't the Pennsylvania court said that these cases should not be linked? No, Your Honor. The one case cited by the trial court is a Pennsylvania Supreme Court case of Stokes v. Loyal Order of Moose Lodge, number 696. That case stands for the proposition that if a plaintiff sues a defendant and that defendant suffers its own distinct damages, it cannot go after another defendant. Well, let me quote from Stokes. It says Rule 2252, that's the state joinder rule, right? Yes. Quote, does not allow a complaint alleging wrongful denial of coverage under a general policy of insurance to be joined in a liability action. Your action against Madera is a liability action. Correct. Your action against progressive is an action alleging wrongful denial of coverage. And again, I asked to go back to the standard because what that case was referring to was two different distinct damages. They're talking again. Forget about damages for a minute. Let's talk liability. Doesn't that go right? Stokes, the language I just quoted, say that you can't join those two cases. It would not apply in this case, Your Honor. And the reason why is, again, the standard, the burden that the plaintiff has to prove. It's the same against both parties, whether it's against Madera or whether it's against progressive. It's when and when it comes to progressive, the burden of proof. So the jury instructions against Madera would talk about duty of care and there'd be standard negligence instructions, wouldn't they? A totally different set of jury instructions for progressive. Actually, that's not correct, Your Honor. It's not the jury instructions that were provided in the case against progressive here. The jury instructions weren't breach of contract instructions. No, they were not. They were focused on the damages sustained. And the reason they were is because negligence was again, that was not an issue in this case. There was no question that the defendant made a left turn and broadsided the plaintiff's vehicle. That was not an issue. The issue was the extent of her damages. We're talking about removal here. Yes. And removal is a matter of federal jurisdiction. Why are we looking to Pennsylvania law at all? Well, why is Pennsylvania? You mean every federal court, when there's an issue of removal, doesn't look at federal law as to whether removal is appropriate, but has to look at the state law? No, Your Honor. I think Your Honor nailed it, is that the federal statute is where we look first. The conversation took us to the second step. But the first step is, yes, under federal law, is removal appropriate? In this case, it was not appropriate. We have Felix Madera was a foreign defendant. And you had a defendant, and there's a foreign, you combine the foreign defendant rule, you have a defendant who was properly served and joined in the case, correct? Yes. And there's no fraudulent joinder. That is, there is definitely a claim against him. So it was improperly removed. He has the right to have it go back, correct? That was our plan. So what happened here is that didn't happen. He was thrown out and the case proceeded. What's what would happen if we agree with you that removal should not have been granted here? And the case should have totally been sent back. So is this a trial and nullity because the court didn't have jurisdiction? Well, I would say yes for that reason. Also, for some of the other reasons raised on appeal here. But this is a jurisdictional issue. If it should have gone back because there was no removal jurisdiction based on the foreign defendant rule and there's no fraudulent misjoinder, then the case goes back totally. And I agree, Your Honor. And and even if progressive wanted to raise the same issues in state court, they had a procedure for doing that through preliminary objections. They chose not to. And again, they chose the defective removal process, which is a federal matter. Yes, absolutely. And and again, under the federal statutes that remand statutes are to be strictly construed against remand. Exactly. And in this case, OK, I guess. Yes, against removal. And as Judge Rendell just pointed out that we shouldn't get past the second stage. I mean, if we do and look at the merits that would go under Pennsylvania law, which I do believe is under in plaintiff's favor. But again, because of Stokes not applying for the reasons you mentioned before. Yes. Stokes and all the cases citing to Stokes that the focus is on the join your rules, that if all if the injuries occur, come from one occurrence or transaction, in this case, the motor vehicle accident, then they should be properly joined. What about Encompass, our decision in Encompass that seems to go against you? You familiar with that decision? I am not familiar with Encompass. Encompass is a decision where we said that a snap removal. Are you familiar with the concept of snap removal? Snap? Yes. I'm sorry. I'm not. Well, is that as I understand? I never did a snap removal myself. But as I understand it, maybe it's a new thing. As I understand it, snap removal involves the joinder of a defendant that would make the case non-diverse. And before that defendant is properly served with process and joined, properly joined, the party removes the case. The defendant removes the case before diversity can be defeated. In our opinion, in Encompass, we said that that created federal jurisdiction. Even though had the service been effectuated prior to the snap removal, diversity would have been defeated. And I would agree with that case, Your Honor. And the reason being is that. So how is that case different than this one? Well, the parties were properly served and joined before it was removed. So how do we determine whether they were properly joined? Well, we have the doc. No, they were served. There's no doubt Madera was served. How do we know that he was properly joined? What does that evaluation look like? Well, in this particular case, we had a lawsuit that was filed on August 8th of 2016. Progressive was served on August 16th, 2016. And this is from the docket at the record of pages 68 through 70. On September 3rd, an attempted service on Madera failed. We did not make service. However, on September 6th, 2016, three days later, an in-house counsel for Progressive did enter an appearance on behalf of Madera. Then on the 12th, on the second shot at it, Madera was served personally. And on that same day, the in-house counsel for Progressive filed an answer on behalf of Madera. That's, sir, we agree. I'm in full agreement with you. He was properly served. How was he properly joined? What does that analysis look like? How do we determine whether he was properly joined? I'm sorry. Maybe I misunderstood the question. Well, in order to determine if someone is properly joined, I think it's important to look at the nexus of the claims against him or her as from the plaintiff's perspective. In this case, the plaintiff was injured in a motor vehicle accident. You mean federal law or Pennsylvania law? Well, this would be federal law because we're talking about, I'm sorry, state law because we're talking about a state court. Right. You sued him in state court. Yes. To determine whether he was properly joined as a defendant in state court, we look to state law, which would be Stokes. But you're saying Stokes doesn't control because of the factual distinction between your case against Madera and the facts of Stokes. Is that your argument? Well, Stokes talks about different injuries from different parties in a linear fashion. That's not what we have here. As I said, Stokes, you had a plaintiff that sues a defendant. This defendant has its own damages and sues another defendant. So this other defendant and the initial plaintiff have no connection. So it's not adding a defendant who could be liable to the plaintiff, which is the additional defendant rule. Exactly. That's why I say when I look at the nexus to determine the analysis as to how to properly join, well, you have a plaintiff that's injured, has a direct negligence claim against Madera. And because of those injuries and Madera being underinsured, Ms. Gillotte also makes a direct claim against her underinsured carrier, Progressive. The plaintiff has the same injuries and is seeking the same damages from two different parties. But if we were to look to Pennsylvania law for whether there's proper joinder, we're applying fraudulent misjoinder principles, which which our court has not adopted. Isn't that correct? That's correct. And I do. I did cite that. Why would we apply Pennsylvania principles? Why wouldn't we look to federal law as to whether someone's properly joined? I mean, it's federal jurisdiction. And I have no doubt that was my argument from the beginning. Your Honor, is that under federal removal procedures, this was improper because defendant Madera, who was the. You mean the removal was proper? No, no, the remover with the removal was not proper because there was not diversity. We had the form defendant rule under 1440. I'm sorry, too. I'm getting remanded. Right. Yes. Right. Yes. The removal was not proper pursuant to 1441 B2, which is the form defendant rule, casually speaking. And so, yes, under federal rule, under federal law, that should have been the first and only step. No, this is a form defendant. It should have been remanded right there without any further analysis. The form defendant rule requires that the court consider whether the person is properly joined and served. That's what this text of the statute says, right? Yes. So you don't just assume that because it's a form defendant. Stop. You have to consider whether the form defendant was properly joined and served. Well, and you explained in detail how Mr. Madera was properly served under the Pennsylvania rules of civil procedure, right? Yes. He wasn't properly served under the federal under the federal rules of civil procedure. He was properly served under the Pennsylvania service rules because you sued him in state court. Right. Exactly. They were the only rules that apply. So if if whether someone is properly served is governed by the Pennsylvania rules of civil procedure, isn't it sort of obvious that whether someone is properly joined, they are joined under the Pennsylvania rules of civil procedure? There are joined rules contained in the Pennsylvania rules just as there are service rules there. Right. Yes. It can't be the case that you're served under the Pennsylvania rules of civil procedure, but you're joined under the federal rules of civil procedure. You're not arguing that. I am not arguing that they both have to be under state rules. But on the other hand, then you would have cases that are proceeding in federal court that have been improperly joined. Together, claims as a matter of federal law. But we're properly joined as state law. Is that is that possible? Well, I do not know if that's because there's federal rule. Twenty eight rule of joinder. That seemed to me to be the applicable. If something's coming into federal court, you've got to make sure that that they're there consistent with the federal rules, which would be rule 20, which says, you know, facts or circumstance. I mean, and here it seems to easily meet rule 20. And I agree again, Your Honor. I think that when it comes to the joinder rules under federal law or under Pennsylvania law, the essence is the same, is that you are supposed to bring together in one lawsuit actions that arise out of one. Mississippi may have a joinder law that says, you know, you can't join an insurer. And I mean, they may have a law that says you can't join an insurer and an insured in the same case as defendants. So it comes into federal law or, you know, and they may have just different rules that might apply. What if what if we are under federal procedural law on the joinder issue? What would take us take us through? Well, I don't we don't look to the state. If we're only looking at federal law, I think, again, the first place we have to look at is, again, whether it was properly removed pursuant to 1441 B2. All right. And what's your argument? Well, that it was not because the defendant, one of the defendants, Felix Madero, who was properly served and joined in Philadelphia, in Pennsylvania. And that is what 1441 B2 prevents is removal when one of the defendants is a citizen of the state which the action is brought. And you say there should have been a remand back to the state court of the negligence claim. I think it should have been a remand of the entire claim. And if there was an issue with trying to sever the issues, there was a procedure under state law to do that because removal was improper from the beginning. That basis for removal as checked on the notice of removal with diversity, which was not proper. So the entire action should have been remanded. That's correct. That is our position. The trial gets thrown out basically because there was no jurisdiction. The court that the court that had the trial had no jurisdiction. That is our position. That's been our position from the initial. And you're saying joinder when you consider whether there's an issue as to proper joinder. It's a fraudulent, fraudulent joinder, which would be absolutely no claim, which doesn't apply here. Or if someone wants to contend that the joinder was improper under Rule 20, that that federal rule could have been raised. Perhaps it could have. I don't believe it was raised because I think that the judge just went off into Pennsylvania. He did. And I think that's where that the misjoinder concept came from, is that the judge went beyond the procedural deficiency that was raised here and looked at the substance. But I think the substance, the trial court respectively, got it wrong because, as I indicated, we're dealing here with a plaintiff suing two parties directly for injuries that occurred at one time, not in a linear fashion, as was the case in Stokes and every other case that relied on Stokes in Pennsylvania. Was this matter raised before the district court either? And was it briefed? Or was there oral argument on the issue as to whether federal procedural law or state procedural law to be followed here? After the remand was denied and Medea was dismissed, there was a request for reconsideration, but there was no oral argument. And whether or not state procedural or federal procedural law, that was not an issue. The focus is more on Stokes. Before the decision was made, was this issue raised or engaged as to whether federal or state procedural law applied before the district court made the decision? Well, there was a prior action, which we had alluded to before this current action, where the plaintiff had sued Medea separately in Philadelphia and also sued Progressive separately. I think Judge Serga meant in this case. In this case. Did the federal court address that issue? I don't believe so. I don't believe so. It was never raised. What was your service like under Rule 4 of the federal rules? Did you get a waiver of service under Rule 4? Well, there was no service under the federal rules. There was no service under federal. It was under state law. Right. So the service was only under state law. So when 1441 B2, the forum defendant rule, talks about people being properly joined and served. That's state law. You served only under there is no federal service here, right? There was not because we did not sue in federal court. Right. That is correct. So in a case like this, the service is inevitably going to be state service. Process. I think in every case it's going to be when the when similar circumstances when we're looking at 1441 and a form defendant rule. I think in most cases we're going to be looking at the state service rules because that's where the issue comes up. All right. We'll hear you on rebuttal. Thank you, Mr. Rosen. Let's hear from Mr. Cooper on behalf of Mr. Madera. Good morning, your honor. Good morning. I'm going to violate my normal rule, which is to let the advocates say a few things before we jump all over you. But in light of the productive discussion we have with Mr. Rosen, why? Why shouldn't we just remand this case and order the district court to give a thorough examination of what exactly 1441 B2 requires and reconsider this issue? Because I think there are a lot of questions here about whether state law applies, whether federal law applies. We're a court of review, not first view. Shouldn't we have that issue thoroughly treated in the district court before we try to write an opinion on it? Your honor, respectfully, I don't believe we need to reach that issue because I want to correct something of record. As your honor mentioned, the form defendant rule under 1441 B2 requires that the defendant, who is a citizen of the state, be properly joined and served. It is incorrect in this case that Mr. Madera was served at the time that Progressive filed for removal. These are the facts in terms of the unsubstantiated record. So this is a stat removal case? That's correct. Why are we hearing about this for the first time now? Your honor, Encompass came to us, the opinion in August, and came to us. It's another argument that we have in addition to the arguments that we wrote. So you briefed this before Encompass was decided? I believe Encompass had been decided a month prior. But not brought to your attention? But not brought to our attention. And we didn't get a 28-J letter. Yeah, you've got to send a 28-J letter next time. Yes, your honor. Okay, this is a snap issue. Right. If I may just briefly, your honor. Did I, by the way, I have no confidence that I correctly articulated the snap removal process, not having done one myself. Do you have any amendments or corrections to make? I don't have any amendments or corrections, your honor. So what happened?  Yes, just to correct the record. The appellant filed this action on August 8, 2016. Progressive was served. That's not my client. My client is Mr. Madera, who is the only citizen of Pennsylvania in this case. Progressive was served on August 16, 2016. Progressive filed for removal on September 7, 2016. My client, as Mr. Rosen just admitted, was served on September 12, 2016. Now, Judge Hardiman, you referred to the Encompass case. In that case, there was a form defendant who mentioned to the plaintiff, sure, I'll accept service, but did not formally accept service. Now, an appeal was taken based upon removal and then a failure to remand. The failure to remand was affirmed by, I believe it was the Western District in that case, and then affirmed by this court. The issue there was that the court held that the 1441b2, the language, is unambiguous about joinder and service needing to be done on the form defendant before there is removal. Before the writ of removal? Before removal can be filed. Can be filed. That's correct. That's correct, your honor. So on that alone, I mean, I'm also prepared to argue that joinder was not properly done. Well, I don't think we want to go there. Why don't we, do you have anything to add on this issue, Mr. Watson? Because I think we ought to bring Mr. Rosen back up for clarification. Not at this time, your honor. All right. Why don't we, we'll reserve the time of Mr. Recupero, Mr. Watson. Let's hear from Mr. Rosen on this issue. Well, at least we can make a record here, perhaps, as to whether Mr. Recupero stated the facts correctly. You know, I have to say, 28J is there for a reason, and this should not be coming up at argument. If this is something that's going to totally impact the case, this needs to be brought to the court's attention ahead of time. We've spent a lot, a lot, a lot of time on this case. We've spent hours and hours on fraudulent joinder, misjoinder, state law, federal law. We have expended a lot of judicial resources. And if this is something that's going to resolve the case, it should have been brought to our attention ahead of time. Well, that's right. No, I just, it really should have been brought to our attention. We'll give you a chance in a minute, Mr. Watson. Go ahead, Mr. Rosen. Added fairness to opposing counsel, too. The sequence Mr. Recupero just mentioned, is that accurate? No, that is incorrect. Okay. We have the docket, and I know I started to recite it, but we have the docket of the order of events. Progressive did not move, did not seek to remove the case to federal court until October 1, 2016. It's page 60, page 68 of the record starts the docket where it indicates at the bottom the complaint was served on August 8th. We see on the following page, September 6th, is where an entry of appearance on behalf of Felix Madera was made by Justin Schluth. And then the following page, at page 70, we have the notice of removal docketed October 1, 2016. So I do not know where their arguments come from, and I can't address it. Let's have him address it. Mr. Recupero, please. What's your docket show? Yes, the removal was done. Mr. Watson may be able to explain better than I, but the removal was done on the date stated. When it was docketed on the court. October 1? No, your honor. 9-7. All right. Let's get Mr. Watson, as progressive's counsel, let's hear from Mr. Watson. The notice of removal, James Watson for Progressive Advanced Insurance Company, may it please the court. The notice of removal is date stamped as filed on 9-7-16 with the Eastern District Court. Well, he said that Madera was served on 9-6. Madera was served for the dockets on 9-12-16. I have a copy of the dockets, appendix 70. All right. Go ahead. And then the notice of the filing of the notice of removal in the Court of Common Pleas, letting the Court of Common Pleas know that a removal had been filed, that was filed on October 1. Well, that's totally different. Totally different. So the case landed, I do remember this, I did do some removal. You actually physically transport the file from the Court of Common Pleas to the Federal District Court. You're saying that actually occurred on what date? The 7th? Well, 9-7, the notice of removal was filed. Okay. Notice was filed. Notice of removal. He filed here with the Eastern District Court. All right. And did you transfer? When does removal occur? Did you transfer the docket that day? Because if the docket didn't get transferred, if the actual physical file didn't get transferred until October 1, then we're going to have to have a whole new round of briefing on this case to determine whether removal occurs. Apologies on this Encompass case, I just became aware of it a day or so ago as I was preparing it, it became an issue that was... All right, but tell us when the file was moved from the Court of Common Pleas. Was this Philadelphia County? Philadelphia County. Oh, then it definitely wasn't right at the same time of the notice. Maybe things move faster in the West, but in Allegheny County, when you remove a case, maybe it's also because it's four blocks away on Grant Street, but you get the file on one end of Grant Street and you bring it to the other end the same day the notice of removal is filed. The file usually transfers in about a month from receipt of the notice to the court. But the important thing in the dispositive date is when the removal is filed with the court. The removal, well, we don't have briefing on that. Don't we need briefing on that? I'd be happy to... Unless you know a case off the top of your head, you can cite it. I'd be happy to do a supplemental brief. Well, we're going to have to. We're going to have to. Why don't we continue with the rest of the argument about their position vis-a-vis Joiner, et cetera, because if this is resolved one way or the other, we're going to have to hear the rest. Okay. Unless you want to have that and then come back for our argument. I was hoping to avoid doing more unnecessary work. We're here now. Yeah, right. Go ahead. Okay.  Who's going to be... Mr. Recupero. Mr. Recupero. Judge Medea. Yes, my time is allotted for five minutes, so I just want to make sure Mr. Watson also has his time. I will say just one more thing on this. The compass talks about filed notice of removal, and that is the dispositive date. But moving on from that, because I understand we're talking about other issues today. With regard to... Excuse me. Excuse me. With regard to the fraud... Mr. Recupero, can I just ask, when did you become aware of Encompass? Mr. Watson advised it to me just the other day. All right. Yesterday. With regard to the fraudulent misjoinder argument, procedural history of the case, I think, just shows how this case was... Mr. Madera was fraudulently misjoined. In the sense, the appellant filed three actions, but the first two actions were filed. He had a valid action procedurally against Mr. Madera, a valid action procedurally against Progressive, at least stated action in terms of jurisdictional purposes in state court. Judge Kelly made a ruling when that action against Progressive was brought up to the federal court, removed, and the appellant attempted to join my client, Mr. Madera, that that joinder would be fraudulent, under the Stokes standard, and dismissed, and instead... Why would we apply the Pennsylvania standard rather than federal standard? Well, I believe, Your Honor, because this case was originally filed in Pennsylvania court. Okay, but they're asking to come to federal law and federal court, and when you're in federal court, federal rules govern. Your Honor, I would argue that this, in terms of determining jurisdiction, we need to look at what was the case before removal was done, before removal was filed. And we were talking about this was filed originally in Pennsylvania. But then that would mean that every federal court, considering removal, would be looking at 50 states' different joinder rules. Is that really what we do in federal court when determining federal jurisdiction? Respectfully, Your Honor, I believe that the cases that we should be looking at Pennsylvania law, I believe Judge Kelly is correct about that. It's only when the form defendant rule is implicated, right? It's not all removal cases. The entire argument here is based upon the form defendant rule, not the entire removal statute. Just that particular section of the statute. And in this case, the plaintiff could have proceeded in both state court and federal court against Mr. Devera and Progressive, respectively, and made a tactical decision to voluntarily discontinue both actions and do exactly what Judge Kelly said you could not do and file a third action, which joined. And if there's one thing I can add to what the appellant mentioned is that we're not just talking about a breach of contract case here. There was a bad faith claim against Progressive. Now, bad faith, as Your Honors are aware, entitles an entirely different standard of proof, entirely different evidence, entirely different transaction occurrence. But the damages and what happened and the injuries and the damages would all be relevant to both, wouldn't they? Respectfully, Your Honor, I believe it would be relevant to the breach of contract UIM claim, but not to the statutory bad faith claim. Why not? The damages are going to be assessed, have to do with their injuries. The damages under the statute, Your Honor, to my understanding, are additional damages for punitive damages for attorney's fees and based upon the conduct of the insurer, not based upon my client. Well, but a lot is going to happen, depend upon what happened in the accident. Respectfully, Your Honor, I believe that that would go to the UIM claim, but the actions of Progressive as the insurer have nothing to do with my client and certainly nothing to do with the negligence claims. Let's assume that we agree that we're under federal procedural law here. So we look to the federal rules and the federal law. So then the question is, is it the same transaction or occurrence? And so what's your argument then? I see that my time is up, but I would argue that it is not the same transaction or occurrence because, again, we are not just talking about a breach of contract case that would deal with the same damages for personal injury. We're talking about damages under a statute that concern an insurance company's behavior. Okay, so then what's the next step, assuming the court was wrong there? Assuming that the court was wrong, then the form defendant rule does not apply and remand should not be granted, and the court correctly determined that. I notice that my time is up. Remand should not be granted under that circumstance? Under that circumstance, the case should not be remanded, which it was not. It should be dismissed? My client should be dismissed based upon the procedural history of this case in terms of the fraudulent misjoinder of the actions. Why do we get to fraudulent misjoinder? We get to that respectfully, Your Honor, because we're talking about an action where Judge Kelly had made a ruling. And then the appellant refiled the case, combining both actions, just as Judge Kelly said we could not do. And if we look into the facts and into the procedure, we see that that was done. And then respectfully, that decision was made. This was a clear attempt to simply just form shop and defeat the jurisdiction, and we get to the removal. Okay, thank you, Mr. Kuprow, Mr. Watson. Thank you, Your Honor. Obviously, when you're considering fraudulent removal and those concepts, and also the appropriateness of it. There's no fraudulent removal. It's removal based on fraudulent misjoinder. I'm sorry. I apologize. Fraudulent removal is not a concept. I misspoke. Thank you, Your Honor. When you're looking at these issues, one of the things that needs to be taken into account is that misjoining fraudulent misjoinder, which I understand hasn't been officially accepted by the Third Circuit, but it has been accepted in the Eastern District by the Eleventh Circuit and a number of other circuits have commented on it favorably, even though they may not have accepted it. Which Eastern District case? I believe we cite in our briefs a number of cases where it's been discussed. Tapscott, obviously, is the Eleventh Circuit opinion. Eastern District, the ones that we believe discuss the concept is Cheney. Discussed. Have any of them applied it? Well, there's In Re Evandia Marketing discusses the concept. It discusses it in the concept of fraudulent joinder, but it also talks about misjoining claims. That doesn't apply. Okay. Have any of our courts in our circuit applied fraudulent misjoinder to effect, to be the dispositive ruling in a removal case? I believe that they did. I'd have to review it in full, but in the diet drugs, in raid diet drugs case, 294F2, page 10 of my brief, we cite it. Are you aware of Judge Wolfson's decision in the Plavix case in New Jersey, discussing it and offering reasons why we shouldn't adopt it? I think I ran across it. That's out of Camden? Yes. You would agree that if we were to affirm, we would be, in effect, adopting fraudulent misjoinder? I don't agree because of the snap joinder issue. I don't even think you need to go there. Forget the snap joinder issue. We're going beyond that. Sure. But you would agree, would you not, that forget snap joinder, that we would be adopting fraudulent misjoinder if we affirmed? Not necessarily. The concept of fraudulent joinder, not misjoinder, fraudulent joinder, can be applied on a legal basis, not only based on the facts. Wait. I'm talking about fraudulent misjoinder. I'm sorry. Fraudulent misjoinder. If we affirm and say Judge Kelly was right in using Stokes, well, maybe we'd say he applied it wrong. We might reverse and say he applied it wrong. But if we say that he was right to use Stokes and the joinder rules of the State of Pennsylvania, we would be adopting a fraudulent misjoinder principle, other than the egregiousness. We would be doing what Tapscott said we should do. In part, but the other considerations here that need to be taken into account is whether under the joinder rules in Rule 20 and the federal rules of civil procedure would have prohibited the joinder of these claims. That's not fraudulent misjoinder. That might be applying the forum defendant rule and saying there was proper joinder because joinder is implicit in that rule, but use Rule 20. But that's not applying state law. Okay. We believe that fraudulent misjoinder is an appropriate standard to be considered. Yes. To be adopted. Yes, we do. It has been discussed by a number of circuits. What makes it, what recommends it to us on an issue of removal that we're supposed to look at, delve into state law? Well, in some respects, you don't even have to delve into state law. If you look at Rule 20, it wouldn't allow typically, it talks about same transactions or occurrence, correct? Okay. That's just misjoinder then. You're getting into forum defendant. You're talking generally it should be applied or are you saying, I mean, forum defendant is different because it has properly joined. Right. And it invites an inquiry. That forum defendant invites an inquiry into joinder that isn't there in a regular removal, correct? Correct. Okay. So there is an inquiry. Now, it wasn't treated that way by Judge Kelly. He was treating it as misjoinder. But under forum defendant, it would be appropriate under the joinder that you look at Rule 20. But you're saying separate and apart from that, every time there is a removal, of course, we probably don't get it here because we can decide it basically on forum defendant. And, I mean, the concept behind it, behind this rule, is why would we have totally distinct claims, distinct types of damages combined in the same case when there's no connection to them? That's what the rule is about. Well, but on the other hand, if you're arguing that Stokes was properly applied, then you're saying why shouldn't we have, you know, lots of different claims, different state claims come into federal court when they might not have been able to come into federal court under the federal rules? I think one of the concepts to think about is, obviously this is a court of limited jurisdiction. And one of the things that should be the focus when you're deciding whether you're going to let parties, by their pleadings, work around the issue of a cause of action that is appropriately not combined with another cause of action. For instance, bad faith and a tort claim. These claims are totally different. Under those circumstances, to have those cases combined, it doesn't make much sense. And it's inconsistent with the joinder rules. Why doesn't Rule 20 decide that issue? What's that? Why doesn't the application of Rule 20 decide that issue? Any question on law or fact common to all defendants will arise in the action. I'm looking at Rule 20 right here. And one thing that's important is Rule 20 has an and between A and B. It talks about arising out of the same transaction of occurrence and any question or law or fact common to all defendants. It doesn't arise out of both. I would argue it doesn't in the bad faith context. Because in the bad faith context, what is being alleged is that the claims handling was improper. Sometimes it would be alleged that the insurer puts their interests above that of the insurer. Belief is asserted with respect to or arising out of. We've got a traffic accident here. We've got a traffic accident. Arising out of is pretty general. Well, I don't know why you're arguing on this. I mean, it seems like a dead loser. Isn't your better argument that the text of the form defendant rule talks about properly joined and served? Yes. Since the defendant is sued in state court and served under state process, that trying to give effect to all of those words, it would be passing strange for this court to say that served is governed by the Pennsylvania rules of civil procedure, but joined is governed by the federal rules of civil procedure. Ron, I couldn't have said it better myself. Thank you for redirecting me back to sanity. I've never done a snap removal, but I have done some appellate arguments. It's new to a lot of us. But that's really the issue because properly joined and served, the law when this case was brought, it was brought against the rules of Stokes, against the ruling of Stokes. That bad faith type claim shouldn't be with the tort. Are you aware of the Supreme Court case of Shamrock Oil saying the decision of removal turns on the meaning of the removal statute, not upon the characterization of the suit or the parties to it  Well, never mind. I think the statute reads on the snap removal issue that this court has interpreted as being very clear that if a form defendant is not properly joined and served, that it's not going to stand in the way of removal. And on that issue, which I understand there may be supplemental briefing on, possibly additional argument if the court pleases, I don't think we even need to address these other issues because the court had jurisdiction. Once the court has jurisdiction, the court has jurisdiction to decide if certain claims should be removed. Well, you only went on that if the removal trigger is the date the notice of removal was filed as opposed to the date the docket is transferred. Yeah, and I believe we will prevail on that once it's briefed. All right. Thank you, Mr. Watson. Mr. Rosen, anything else? Very briefly. I should not have said very, but I will say briefly. Just for once, I might hold you to the clock. Okay. Well, just one point on that last issue as far as whether it's even necessary to do any further briefs. Whether we're talking about what's docketed as the notice of removal October 1 or when there was an attempt to remove September 7, that's still after an attorney for Madera entered an appearance. So I think it would be a tough sell for a progressive to indicate. Well, 1441b2 doesn't say when a lawyer entered an appearance. It says joined and served, right? That's correct. And I think if it's necessary to brief that issue, I think an attorney entering an appearance on behalf of a defendant would subsume the issue of whether they've been served and joined. Okay. All right. Thank you, Mr. Rosen. Oh, go ahead. You had one? Well, just some other issues that were raised. I know Counsel for Madera had raised a prior order of Judge Kelly, and I just want to bring that full circle because I think, Judge Randall, as you had said, that the federal standard should be used, and that's what was done. The judge, he denied a prior motion to join the parties, and in a footnote, which was the only text of the order, we find that progressive had a legal right to remove this lawsuit originally. That was before this current lawsuit. That's when two separate lawsuits were filed in Philadelphia, and the judge was correct. When progressive first did a removal, a joinder motion in the Philadelphia Court of Common Pleas was pending. The court had not ruled on it, so progressive's removal at that time was procedurally correct, and that's why both actions were withdrawn and filed as one action. Because now, this removal here was procedurally incorrect under federal law. And as far as the other argument, that the purpose of refiling was to circumvent the judge's order, that is just completely inaccurate. That's not before us. Yes. So that was the only issue that was raised by defense counsel. There were other issues raised on this appeal that I can get into. The first one being was the denial of the motion for leave to amend. Now, this court's previously said that prejudice is the key. If a defendant's prejudice, leave will be denied. There was no prejudice here. Why not? Well, because what we were seeking to amend were not facts. They were facts that were already pled in the complaint, but was to make it clear that those facts were also we were seeking to recover from. But there's a different standard. It's the PIP. There's a different standard there. There's different considerations that apply. And this was filed, well, was that right before trial? The issue was raised right before trial. The issue that we're seeking to add was the $50,000 medical expense claim that Ms. Jalot has and additional income loss beyond what Progressive had already paid because her policy only provided $5,000. That's in the complaint, and it was discovered. But under different standards. I mean, there would be different standards that would apply that could have been considered. During discovery, all the documents concerning medical expenses and wage loss were discovered. There was no prejudice, nothing hiding at all. In fact, it was Progressive who raised this issue and said they're going to try to exclude the medical expenses and wage loss from trial. And that's when, during the pretrial memo, it was indicated we're going to have to file a motion to amend that because it shouldn't even have been done in the first place because those issues should have been included based on the original allegations of the complaint. But because that issue was raised, we raised the issue that we'll have to file a motion to amend. But the reality is Progressive raised the issue because they already had all the facts they needed to defend the issue. They were only raising the facts. You may have the facts, but if you're not thinking of the theories and the standard as you go along and it catches you at the last minute, that may not be entirely right. The doctor's records and notes, the admission, the doctor testified and he referred to his notes, but they were not authenticated or they weren't authenticated, were they? The doctor testified that he was testifying based upon his notes. And these were the same notes that Progressive had used pre-suit to pay Mr. Lott on her wage loss claim. But they weren't, I mean, there would be hearsay, would they not? Well, if there was a true challenge to the authentication or the truth of what's stated in there, but there was, based on Progressive priorly paying benefits based upon those notes, it would be an admission. The real objection was they said it was on purely. An admission. An admission. They paid based upon, it's not an admission by Progressive. An admission as to the truth of the documents. There was no real hearsay objection. There was no real authentication issue because Progressive had relied on these same documents. The issue. Well, I mean, but that's one thing to say that they relied on documents. Another thing is to say that the jury can treat that as evidence. Well, and Your Honor, this was a first party claim. And why should the jury not have the same information that Progressive had when they initially denied the claim? Or paid or offered a very nominal amount to pay for it? The wage loss and medical expenses are part of compensation that's recoverable in a motor vehicle case. There was no, I was going back to prejudice, but. Was there anything in the notes that you wanted the jury to have in addition to his testimony? If there was, they'd be hearsay. If it wasn't, then it was cumulative. It was just the notes. Well, we had offered all of it in, but the notes were the key, which was subsequently determined by the jury who asked if there is a note to define. That was the last issue we raised on appeal. He testified as to what was in his notes, did he not? He did. And the judge said there's nothing in the record that could answer that question if there was a note. When the judge should have said, remember the testimony. I mean. Well, it is to remember the testimony. The notes hadn't been admitted, correct? Correct. But the judge, in response to the question, does a doctor's note explain why she left, with some other reasons, instead of referring to anything, it said there's nothing. It said there's nothing in the record because there was nothing in the record, was there? Well, the testimony is part of the record, Your Honor. Well, but you said notes. They were looking for a note. This had to do with her employment at the cessation? Yes, yes. It was the same doctor's notes that Dr. Lipton had wrote, the same doctor's notes that Progressive used to pay on her income loss claim. I don't think, as I remember, there really wasn't anything that really showed her employment had been terminated, was there? Well, Your Honor, there was. I think we have to look at it in context, is that the plaintiff's Exhibit 13, which were the records from her part-time job. She also had a full-time job that she kept, but the part-time job is what she couldn't continue to do after this accident. But she wasn't terminated. She just stopped. Well, she couldn't continue because she couldn't sit down. Right, she couldn't continue. But terminated means, was she terminated? No, she wasn't terminated. She just stopped doing what the doctor said. She says, is there anything in the record showing how Jalad's employment was terminated? Well, there isn't. All the record shows is that she stopped. Well, Your Honor, I believe the judge's statement took away any type of fact-finding or inference-making job of the jury. And that's why I indicate, Your Honor, I think it needs to be looked at in context. When the jury first went out, they came back quickly with asking questions. How long was the plaintiff working at My Alarm Center? That's the part-time job. How soon did she return to My Alarm Center after the date of incident? And did she communicate to My Alarm Center that she was in an accident? That's when we realized that the court had not provided Plaintiff's Exhibit 13, which had a leave of absence form from My Alarm Center, had a wage verification form indicating the first day she was out of work because of the accident was this day and that she didn't return. And it also had wage records showing how much she worked before this incident and then showing her trickling down and working very few hours for a couple weeks until she couldn't work at all three weeks after the incident. Now, the jury had that information after asking those questions. Then they came back and asked, well, how was the employment terminated? Do you think that he was then saying, of course, you disregard Exhibit 13? No, he was saying there's nothing that's showing that she was terminated. That probably showed what it showed, but it didn't say notice of termination or date of termination or anything like that. By the judge saying there's nothing in the record that can answer your question, again, that tells the jury stop thinking about it. Don't look at Exhibit 13 anymore and see the timeline. It seems to me they looked at Exhibit 13 and they're like, is this all there is or was she terminated and there wasn't anything in addition? Well, I don't want to argue with you. My last point on that is that it was up to the jury to make an inference why, especially because there was evidence as to why, because the doctor testified to it. And by the judge saying there's nothing in the record, there's no reason for a jury to go back and say, well, what did the doctor testify to? They're not going to make that inquiry because the judge has told them not to. Well, all right. Thank you. Thank you. All right. Thank you, Mr. Rose. And the court is going to order. Does he want to respond to that? If we feel that the trial was okay, we're going to have to decide these. Does he want to argue on that? Do you want to argue these positions? Do you want to hear anything further from Mr. Recupero or Mr. Watson? Because we in a display of latitude, we allowed Mr. Rosen to argue things on rebuttal that were not raised in his initial argument, which we rarely do. But since I did that, go ahead. Just briefly on these points, as Judge Rendell pointed out, I don't believe that the issue that the instruction provided by Judge Kelly was incorrect under Donlon v. Phillips' lighting, which Judge Sirica and Judge Hardiman were involved in writing that opinion, because he did not say anything that was incorrect and it reflected the evidence that was provided. It would not have provided confusion or to mislead the jury. And accordingly, that issue should be affirmed. As to the PIP issue, briefly, as Judge Rendell pointed out, there is clearly different standards. There's different adjusters. There's different case files. In this case, there was also a peer review process which had taken place, which was one of the basis for the denial of some of the medical records and that unrelated PIP matter. At least it wasn't brought into this case. And that doctor who did the peer review might have had to be called as a witness. Clearly, and this motion was filed on a Thursday before the trial, which began on Monday or Tuesday. And three video depositions had been done and a fourth was scheduled for that afternoon when the motion was filed. So clearly, we have undue prejudice. There was never an explanation below for the undue delay and why it was just being filed on the eve of trial. Well, the argument was at the pretrial conference, you objected to certain medical records. There's no question that there were issues raised in the joint pretrial order, which was submitted in February. This trial was filed in – I'm sorry, this trial commenced in early April. But clearly, discovery in this case ended around September. And essentially, the first formal attempt to bring a PIP claim, which is to separate and distinguish from a UIM claim, as Judge Rendell pointed out, was four or five days before trial. And one of the standards to consider is undue prejudice and undue delay. And undue delay in and of itself can form as a basis for a denial of this type of motion. It was never addressed in the papers below. And I don't believe it's been fully properly addressed here. And I would argue that issue is waived. And the court found undue prejudice and undue delay in its determination and should not be disturbed. The court did not abuse its discretion on that issue. As to the various doctor's notes, Judge Rendell pointed out, these documents were never marked during the deposition. The deposition of Dr. Lipton, who was a treating doctor, never did an expert report because he was just a treating doctor. The only exhibit marked at his deposition was his CV. And essentially, for them to try to bring in these documents later on, it is hearsay. They weren't properly authenticated. And also, they were cumulative to the testimony. Dr. Lipton went through each and every doctor's note he issued with a temporary, you're out of work for this period of time. It was all in the record. The jury heard all that. They saw the videotape of Dr. Lipton. None of that was precluded. So essentially, we have a situation where the court was properly determining that these records would have been cumulative. And had it not been cumulative, it also would be harmless error because it would be a problem with authenticity and hearsay. And on those bases, the panel could have independently affirmed that. But we believe the court had it right and didn't abuse discretion on finding that the materials were cumulative. And with that. Thank you, Mr. Watson. Let me begin by thanking our court crier, Ms. Skversky, for laboring under the most unusual of clock circumstances today. Thank you for your hard work. Secondly, the court is going to order the parties to file supplemental briefs not to exceed 10 pages, double-spaced, on or before Friday, February 22 at 5 p.m. on the question of the application of the affectionately known SNAP removal rule established in our case of Encompass Insurance v. Stone Mansion, 902 F. 3rd, 147. And particularly, you can tell us whatever you want about that issue, but we're particularly interested in whether the removal is triggered the date the notice of removal was filed, which we were told is September 7, 2016, or on the date that the file was transferred from the state court to the federal court, which we were told is October 1, 2016. And whether entry of appearance by an attorney. Yes, certainly. If entry of appearance affects that. Satisfies service. Right. We'd be happy to hear about that if you'd wish to. And we will take the matter under advisement. Look forward to receiving the supplemental briefing. Can adjourn court.